NATIONWIDE MUTUAL INS. CO. v. PUBLIC SERVICE CO. OF N.C.

[112 N.C. App. 345 (1993)]

and uncounselled defendants along with police officers when° executing search warrants at defendants' premises. However, on the facts before us, we cannot say as a matter of law that defendant's incriminating statements would not have been obtained but for the officers' violations of G.S. 15A-501(2) and (5). Defendant did not argue below that he would not have made the incriminating statements had he been taken before a judicial official and advised of his right to communicate with counsel and friends pursuant to the statute. Since defendant did not argue a causal connection between the violations of G.S. 15A-501(2) and (5) and his incriminating statements, the trial court properly denied suppressing the statements under G.S. 15A-974(2). Accordingly, we find no error.

No error.

Judges GREENE and LEWIS concur.

---

NATIONWIDE MUTUAL INSURANCE COMPANY v. PUBLIC SERVICE COM-
PANY OF NORTH CAROLINA, INCORPORATED

No. 9210SC904

(Filed 19 October 1993)

1. **Insurance § 679 (NCI4th)— settlement over insured's objections—close to deductible—summary judgment for insurer**

The trial court did not err by granting summary judgment for plaintiff insurer in an action to recover a $100,000 deductible where plaintiff issued a business automobile insurance policy to defendant which provided a deductible of $100,000; one of defendant's employees was involved in a collision with Charles Pulley while driving one of defendant's trucks; as the attorney retained by plaintiff investigated the incident, it appeared to him that it was likely that the employee would be found to be negligent and defendant would be liable; defendant continually expressed to plaintiff and the attorney that it felt that it could win the case and wished for the case to go to trial; and the suit was settled for $101,500.00 on the morning of trial. The policy explicitly grants to the plaintiff the right to settle a claim against the insured without the

insured's consent. Although any settlement must be made in good faith regardless of any contractual provision reserving to the insurer the exclusive right to settle a claim as it sees fit, when defendant has conceded that the settlement was reasonable there must be some allegation beyond the fact that, due to the deductible, defendant was liable for a much greater share of the settlement amount than was plaintiff.

**Am Jur 2d, Insurance §§ 1394, 1399, 1414 et seq.**

**2. Insurance § 680 (NCI4th)— settlement by insurer—effect on insured's right to independent counsel—insurer's duty to defend**

The trial court did not err by granting plaintiff insurer's motion for a summary judgment in an action to recover a $100,000 deductible where defendant had argued that the plaintiff's failure to notify defendant of its intention to settle the suit deprived plaintiff of its right to independent counsel and breached plaintiff's duty to defend. If by some chance defendant was unaware of the conflict inherent in deductible provisions, plaintiff's letter of 13 July 1987 put defendant on notice of the conflict and of its right to an independent counsel.

**Am Jur 2d, Insurance § 1415.**

**3. Insurance § 679 (NCI4th)— settlement close to deductible— tortious interference with fiduciary relationship—summary judgment for insurer**

The trial court did not err by granting summary judgment for plaintiff insurer in an action to recover a deductible where defendant insured counterclaimed for tortious interference with the fiduciary relationship with its attorney and breach of plaintiff's fiduciary duty to defendant. Since the defendant does not dispute that the policy gave plaintiff the right to settle the case as it saw fit and defendant concedes that the settlement was reasonable, these two claims are really just attempts to raise the claim of bad faith under a different guise. There was no genuine issue of material fact as to the bad faith claim.

**Am Jur 2d, Insurance §§ 1394, 1399, 1414 et seq.**

Appeal by defendant from judgment entered 26 June 1991 by Judge Anthony Brannon in Wake County Superior Court. Heard in the Court of Appeals 1 September 1993.

**NATIONWIDE MUTUAL INS. CO. v. PUBLIC SERVICE CO. OF N.C.**

[112 N.C. App. 345 (1993)]

This appeal arises out of an action brought by plaintiff to recover from defendant $100,000.00, which was the amount of the deductible on a claim that the plaintiff insurer had paid on behalf of the insured defendant. Defendant answered, denying that it was liable to plaintiff and alleging that plaintiff had settled the underlying lawsuit in bad faith, that plaintiff had breached its fiduciary duty to defendant, and that plaintiff had breached its contract with defendant. Defendant also brought counterclaims for breach of fiduciary duty and tortious interference with the fiduciary relationship between defendant and its attorney. After discovery, both parties moved for summary judgment, and the trial court entered an order granting summary judgment in favor of plaintiff on all claims. From this order defendant appeals.

*LeBouef, Lamb, Leiby & MacRae, by Peter M. Foley, for plaintiff-appellee.*

*Moore & Van Allen, by George V. Hanna, III, Peter J. McGrath, Jr., and Susan E. Rowell, for defendant-appellant.*

McCRODDEN, Judge.

This case involves questions about the responsibilities an insurance company has to its insured when it negotiates the settlement of a claim against that insured. Defendant poses the questions in terms of the propriety of the trial court's entry of summary judgment in favor of plaintiff insurance company.

The facts of the case are as follows. Plaintiff issued a business automobile insurance policy to defendant providing coverage from 31 December 1985 to 31 December 1986 (the Policy). The Policy provided for coverage up to one million dollars and provided for a deductible in the amount of $100,000.00. It also contained the following provisions:

> We have the right and duty to defend any suit asking for these damages (bodily injury or property damage). However, we have no duty to defend suits for bodily injury or property damage not covered by this Policy. *We may investigate and settle any claim or suit as we consider appropriate.*
>
> . . . .
>
> The terms of the Policy, including those with respect to (A) the Company's rights and duties with respect to the defense

of suits . . . apply irrespective of the application of the deductible amount.

. . . .

The Company may pay any part or all of the deductible amount and upon notification of the action taken, the named insured shall reimburse the Company for that part of the amount which has been paid by the Company . . .

. . . .

The Company's obligations to pay damages on behalf of the insured apply only to the amount of damages in excess of the deductible [amount] . . . .

(Emphasis added).

On 26 February 1986, within the period of coverage, one of defendant's employees, while driving one of defendant's trucks, was involved in a collision with Charles Pulley. Pulley suffered significant injuries in the collision, and on 19 June 1987, filed the suit that underlies this action (the Pulley action). After plaintiff received notice that defendant had been sued, plaintiff wrote to defendant's risk manager on 13 July 1987. In this letter plaintiff stated that in response to the suit it had retained a local attorney, Lee Patterson, to defend the action on behalf of the defendant insured (as well as the plaintiff insurer). The letter also contained the following passage:

[O]ur obligation to pay any damages arising from the accident which is the subject of this suit apply [sic] only to the amount of damages in excess of the deductible amount stated in the endorsement, i.e. $100,000 . . . . Under such circumstances, you may desire to employ an attorney, at your own expense, to represent your uninsured interests, but whether you should or should not do this is a matter that rests entirely with you.

As Patterson investigated the incident, it appeared to him that it was likely that the employee would be found to be negligent and defendant would be liable. He considered the availability of the defense of contributory negligence but thought it unlikely that defendant would be able to prevail on that issue. There was no witness that could testify directly as to Pulley's speed, which might have been the basis of his contributory negligence. During Patterson's preparation of his defense, this Court decided the case *State v.*

*Purdie*, 93 N.C. App. 269, 337 S.E.2d 789 (1989), which Patterson interpreted to mean that expert opinion testimony as to the speed of a vehicle, based solely on accident reconstruction evidence, is inadmissible in North Carolina.

On 27 June 1990, Patterson wrote to a representative of plaintiff to apprise plaintiff of the status of the Pulley action. Patterson described the plaintiff Pulley's injuries and expressed his opinion of the impact of the case *State v. Purdie*. Patterson felt that "[t]his case helps the plaintiff a lot more than it helps us." Patterson concluded by stating that the Pulley action was "a significant case and one with realistic substantial risks."

However, defendant continually expressed to plaintiff and Patterson that it felt that it could win the case and wished for the case to go to trial. On approximately 27 June 1990, plaintiff decided to attempt to settle the action, based in large part on its reading of *State v. Purdie*. Plaintiff did not notify defendant of its decision to try to settle the case.

At the date set for trial, 31 July 1989, the trial judge, Samuel Currin, called the parties into his chambers to encourage them to settle. Patterson contacted plaintiff and plaintiff authorized him to settle for any amount up to $125,000.00. The suit was settled for $101,500.00, which amount plaintiff paid to Pulley. After defendant refused to reimburse plaintiff for the amount of the deductible, plaintiff instituted this action.

---

[1] Defendant's first set of arguments, based upon one assignment of error, is that the trial court erred in entering summary judgment on plaintiff's claim because there was a genuine issue of material fact as to the plaintiff's breach of its obligations under its insurance policy. First, it contends that there was sufficient evidence for a jury determination of whether plaintiff breached its duty to settle the claim in good faith when it instructed Patterson, over defendant's objections, to settle the lawsuit for $101,500.00.

A trial court properly enters summary judgment when it determines that there is no genuine issue of material fact and that one party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990). "In ruling on a motion for summary judgment, the court must consider the evidence in the light most favorable to the non-movant, and give the non-movant all favorable

inferences which may reasonably be drawn from the evidence." *Isbey v. Cooper Companies, Inc.*, 103 N.C. App. 774, 775, 407 S.E.2d 254, 256 (1991), *disc. review denied*, 330 N.C. 613, 412 S.E.2d 87 (1992) (citation omitted). Summary judgment is appropriate in cases where it is alleged that an insurer acted in bad faith. *See Gardner v. Aetna Cas. & Sur. Co.*, 841 F.2d 82 (4th Cir. 1988).

In the present case, the Policy explicitly grants to the plaintiff the right to settle a claim against the insured without the insured's consent. The parties have cited no case law, and our research has revealed none, in which an insurer was found to have acted in bad faith when it settled a case for an amount suspiciously close to the deductible amount. However, this does not mean that an insurer can act with impunity in settling such a case. Regardless of any contractual provision reserving to the insurer the exclusive right to settle a claim as it sees fit, any settlement must be made in good faith. "Where a contract confers on one party a discretionary power affecting the rights of the other, this discretion must be exercised in a reasonable manner based upon good faith and fair play." *Mezzanotte v. Freeland*, 20 N.C. App. 11, 17, 200 S.E.2d 410, 414 (1973), *cert. denied*, 284 N.C. 616, 201 S.E.2d 689 (1974). Specifically, an insurer is required to act in good faith in exercising its right to settle a claim against the insured. *Alford v. Textile Insurance Co.*, 248 N.C. 224, 229, 103 S.E.2d 8, 12 (1958). The insurer must give due regard to the interests of the insured, *see Abernethy v. Utica Mutual Insurance Company*, 373 F.2d 565 (4th Cir. 1967), but this does not mean that the insurer must give more consideration or weight to the interests of the insured than its own interests. When an insurer brings an action against its insured for indemnity, the insurer bears the burden of showing that the settlement was made in good faith. *See Insurance Co. v. Chantos*, 293 N.C. 431, 445, 238 S.E.2d 597, 607 (1977).

Defendant points to the following facts as evidence that plaintiff acted in bad faith: that plaintiff settled the underlying lawsuit for $1500.00 above the amount of the deductible; that the settlement agreement was reached on the morning of the day the case was to be tried; that the settlement was made without notice to defendant, thereby preventing defendant from retaining another attorney; that by settling, plaintiff avoided incurring the expense of a trial; that plaintiff instructed the attorney it had retained to defend the lawsuit to settle the action despite defendant's protestations;

and that the plaintiff's reliance on the case *State v. Purdie* was a mere justification for its decision to settle the case.

We find that these allegations are insufficient to withstand a motion for summary judgment. The essence of defendant's complaint is that it was obligated to pay $100,000.00, while plaintiff only was obligated to pay $1500.00 toward the settlement. Defendant concedes both that the Policy gave plaintiff the right to settle the lawsuit without defendant's consent and that the settlement was reasonable. Whenever there is a deductible provision in an insurance contract, there is the potential for a conflict between the insurer and the insured. *See American Home Assurance Co., Inc. v. Hermann's Warehouse Corp.*, 563 A.2d 444 (N.J. 1989). Even though plaintiff bore the burden of proving that it acted in good faith in settling the action, we believe that when defendant has conceded that the settlement was reasonable, there must be some allegation beyond the fact that, due to the deductible, defendant was liable for a much greater share of the settlement amount than the plaintiff was. In the absence of such an allegation, we find that there was no issue of material fact as to plaintiff's good faith in settling the Pulley action and reject defendant's first argument.

[2]  Defendant next argues that the plaintiff's failure to notify defendant of its intention to settle the suit prior to the settlement deprived defendant of its right to independent counsel and breached plaintiff's duty to defend. We disagree. From the outset, plaintiff made defendant aware of its right to independent counsel. However, defendant asserts that it was unaware that defendant and plaintiff's interests were different until it learned of plaintiff's intention to settle the suit. As stated above, any time there is a deductible provision in an insurance policy, there is an inherent conflict. We believe that, if by some chance defendant was unaware of the conflict inherent in deductible provisions, plaintiff's letter of 13 July 1987 put defendant on notice of the conflict and of its right to an independent counsel. We, therefore, reject defendant's second argument within this assignment of error.

[3]  Defendant's second set of arguments, based upon another assignment of error, is that the trial court erroneously granted summary judgment on defendant's counterclaim for tortious interference with a fiduciary relationship. It contends that there was a genuine issue of material fact as to (a) the claim against plaintiff for its interference

with the fiduciary relationship between defendant and its attorney and (b) the claim that plaintiff breached its fiduciary duty to defendant. We reject both of these contentions.

Since the defendant does not dispute that the Policy gave plaintiff the right to settle the case as it saw fit and defendant concedes that the settlement was reasonable, these two claims are really just attempts to raise the claim of bad faith under a different guise. See Gardner v. Aetna Cas. & Ins. Co., 841 F.2d 82, 87 (where the Court found: "no improper interference simply because Aetna ordered . . . [the attorney] to take an action that was within the scope of Aetna's contractual rights. Appellant's assertion of contractual interference is but a thinly disguised effort to resurrect his bad faith claim in another context."). The action about which defendant is really complaining is plaintiff's instructing Patterson to settle despite its wishes. Since the Policy gave the plaintiff the right to do this and since the only way that plaintiff, which was not a party to the Pulley action, could exercise its right to settle the action was to instruct Patterson to do so, the only complaint that defendant might have about the settlement would be that it was made in bad faith. We reiterate our previously stated holding that there was no genuine issue of material fact as to the bad faith claim and reject defendant's third and fourth arguments.

We hold that summary judgment was properly entered in favor of plaintiff as to each of the claims and affirm the order of the trial court.

Affirmed.

Judges Wells and Orr concur.