**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-2143**

MODERN AUTOMOTIVE NETWORK, LLC,

Plaintiff - Appellant,

v.

EASTERN ALLIANCE INSURANCE COMPANY, d/b/a Eastern Alliance Insurance Group; EASTERN ADVANTAGE ASSURANCE COMPANY, d/b/a Eastern Alliance Insurance Group; ALLIED EASTERN INDEMNITY COMPANY, d/b/a Eastern Alliance Insurance Group,

Defendants - Appellees.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Loretta C. Biggs, District Judge. (1:17-cv-00152-LCB-JEP)

Submitted: December 11, 2020                                    Decided: January 19, 2021

Before KING and QUATTLEBAUM, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished opinion. Judge Quattlebaum wrote the opinion, in which Judge King and Senior Judge Traxler joined.

Andrew L. Fitzgerald, FITZGERALD LITIGATION, Winston-Salem, North Carolina, for Appellant. Reid C. Adams, Jr., Jonathan R. Reich, Brian F. Castro, WOMBLE BOND DICKINSON (US) LLP, Winston-Salem, North Carolina, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

Modern Automotive Network, LLC ("Modern") filed a complaint against Eastern Alliance Insurance Co., Eastern Advantage Assurance Co. and Allied Eastern Indemnity Co. (collectively "Eastern") alleging claims of breach of contract, negligence and violations of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA")* arising out of an insurance coverage dispute. Modern appeals the district court's order denying its motion to strike a witness' declaration, striking Modern's expert witness' testimony and granting summary judgment to Eastern on all claims. Finding no error, we affirm.

I.

Modern first contends that the district court should have struck Jack Holmes' declaration, which purportedly contained expert testimony based on Holmes' thirty years as an attorney dealing with unrepresented claimants before the North Carolina Industrial Commission, because Eastern only disclosed Holmes as a fact witness. We review a district court's discovery rulings for abuse of discretion. *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 189 (4th Cir. 2017). Federal Rule of Civil Procedure 26(a)(2) provides that a party must disclose the identity of any expert witness it intends to call at trial and any written reports prepared by those witnesses or summaries of the witnesses' opinions. A party who fails to provide information or identify a witness as required by Rule 26(a) may not use

---

* N.C. Gen. Stat. § 75-1.1 (2019).

that information or that witness at trial unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1). However, "Federal Rule of Evidence 701 permits a lay witness—with no need for expert qualification—to give opinion testimony that is rationally based on the witness's perception and helpful to determining a fact in issue, so long as it is not based on the same scientific, technical, or other specialized knowledge covered by [Federal Rule of Evidence] 702." *Lord & Taylor, LLC v. White Flint, L.P.*, 849 F.3d 567, 575 (4th Cir. 2017) (internal quotation marks omitted).

The district court determined that Holmes' testimony was governed by Rule 701 because it was based on his personal knowledge and perception. Accordingly, the court determined Eastern was not required to disclose him as an expert witness and denied Modern's motion to strike. After reviewing the record, we agree. Holmes was an attorney who handled a claim filed by one of Modern's employees. He reviewed the claimant's file and prepared a declaration based on his experience with the claimant's case. Thus, Holmes' opinions flowed directly from his personal knowledge and perception of his experience handling the claimant's case before the North Carolina Industrial Commission. Accordingly, we conclude that the district court did not abuse its discretion in denying Modern's motion to strike.

II.

Modern next contends that the district court erred in striking its proposed expert's testimony. "We review a district court's decision to admit or exclude expert evidence for abuse of discretion." *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices & Prods.*

4

*Liab. Litig. (No II) MDL 2502*, 892 F.3d 624, 632 (4th Cir. 2018). Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993). "To be reliable, the testimony 'must be based on scientific, technical, or other specialized *knowledge* and not on belief or speculation, and inferences must be derived using scientific or other valid methods.'" *Belville v. Ford Motor Co.*, 919 F.3d 224, 232 (4th Cir. 2019) (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). Here, the district court excluded the testimony because the expert conceded that he had no experience with pro se claimants before the North Carolina Industrial Commission and had no experience with insurance claims handling, which were matters relevant to this insurance coverage dispute. Further, the court noted that the expert's deposition testimony contradicted the opinions contained in his report. We, of course, afford the district court discretion in making these types of evidentiary decisions. Our review of the record does not reveal any abuse of that discretion by the district court.

III.

Finally, Modern contends that the district court erred in granting summary judgment for Eastern on Modern's breach of contract, negligence and UDTPA claims. We "review[] de novo the district court's order granting summary judgment." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 565 n.1 (4th Cir. 2015). "A district court 'shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* at 568 (quoting Fed. R.

Civ. P. 56(a)). "'A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks omitted)). In determining whether a genuine dispute of material fact exists, "we 'view the facts and all justifiable inferences arising therefrom in the light most favorable to' . . . the nonmoving party." *Id.* at 565 n.1 (quoting *Judd*, 718 F.3d at 312. However, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015) (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)).

A.

Modern first contends that Eastern breached the insurance contract because it had a duty to negotiate a "release and resignation" in a settlement agreement. While Modern concedes that the insurance policy is silent as to this issue, it contends that the policy's "duty to defend" provision is ambiguous and, thus, the district court should have considered Modern's parol evidence that it wanted such a provision.

The phrase "duty to defend," while not defined in the contract, is a legal term of art. "[A]n insurer's duty to defend an action brought against its insured is determined by the language in the policy[.]" *Lambe Realty Inv., Inc. v. Allstate Ins. Co.*, 527 S.E.2d 328, 331 (N.C. Ct. App. 2000). Thus, Modern cannot shoehorn a duty to negotiate a release and resignation into a duty to defend clause when the clause is silent on that issue. Modern does not cite any case in which a court has adopted such an interpretation of a duty to defend

6

clause in a workers' compensation insurance policy. Rather than have us interpret an ambiguous contract, Modern asks us to rewrite the policy. *See Hodgin v. Brighton*, 674 S.E.2d 444, 446 (N.C. Ct. App. 2009) ("If the language [in a contract] is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the parties not bargained for and found therein." (internal quotation marks omitted)). This we cannot do. Accordingly, we affirm the district court's order granting Eastern summary judgment on Modern's breach of contract claim.

B.

Next, Modern argues that Eastern breached its duty of good faith and fair dealing. Again, it is mistaken. "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Heron Bay Acquisition, LLC v. United Metal Finishing, Inc.*, 781 S.E.2d 889, 894 (N.C. Ct. App. 2016) (internal quotation marks omitted). However, the North Carolina Court of Appeals has held:

> [A] cause of action alleging breach of good faith will not lie when the insurer settles a claim within the monetary limits of the insured's policy; however, in doing so, . . . the insurer has the duty to consider the insured's interest. . . . [A]n insurer may act in its own interest in settlement of the claim, and has the statutory authority to settle claims without the consent of the insured.

*Cash v. State Farm Mut. Auto. Ins. Co.*, 528 S.E.2d 372, 380 (N.C. Ct. App. 2000) (citations omitted). Because Eastern had the sole authority to settle the claims and it settled the claims within the policy limits, *Cash* controls. While Modern's evidence may indicate that Eastern considered its own interests in settling the claims, the record also shows that Eastern

7

considered Modern's interests. Thus, under *Cash*, the district court correctly rejected this claim.

## C.

Modern further claims Eastern negligently failed to provide copies of the relevant case files kept by the law firm hired to draft the settlement agreements. The district court granted Eastern summary judgment holding the negligence claim was barred as a matter of law by the economic loss rule.

Under the economic loss rule, "no negligence claim exists where all rights and remedies have been set forth in a contractual relationship." *Beaufort Builders, Inc v. White Plains Church Ministries, Inc.*, 783 S.E.2d 35, 39 (N.C. Ct. App. 2016) (brackets and internal quotation marks omitted). There are four exceptions to this rule. *See id.* at 40. The parties agree that only the fourth exception is potentially applicable—"[t]he injury so caused was a willful injury to or a conversion of the property of the promisee, which was the subject of the contract, by the promisor." *Id.*

For the reasons cited by the district court, Modern is unable to identify evidence that creates a genuine issue of material fact as to whether Eastern converted the case file. Accordingly, we affirm this district court's order granting summary judgment on this claim.

## D.

Finally, Modern claims that the district court erred in rejecting its claims under the UDTPA.

> The UDTPA is meant to prevent unfair or deceptive acts or practices in or affecting commerce. In order to state a claim under the UDTPA, a plaintiff must show (1) [the] defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff. Whether conduct is unfair or deceptive is a legal issue for the court to decide.

*Ellis v. La.-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012) (citations and internal quotation marks omitted). Modern first contends Eastern is liable under the UDTPA by violating Section 58-63-15(11) of the North Carolina Code. Under that sub-section, failing to communicate "with such frequency as to indicate a general business practice" can constitute an unfair method of competition and an unfair or deceptive act or practice relating to the business of insurance. N.C. Gen. Stat. § 58-63-15(11)(b) (2019). And the North Carolina courts have held that violations of § 58-63-15 also constitute violations of the UDTPA. *See Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 396 (4th Cir. 2018). However, as the district court noted, the record reveals no genuine issue of material fact as to whether Eastern routinely failed to communicate. Rather, the record shows Eastern was generally prompt in returning Modern's inquiries. We find no error in the district court's grant of summary judgment on this claim.

Next, Modern attempts to establish a UDTPA violation predicated on Eastern's prioritization of its own interests in settling claims, which is the same basis of its breach of good faith claim. "North Carolina courts have repeatedly held that a mere breach of contract, even if intentional, is not sufficiently unfair or deceptive to sustain an action under the UDTPA." *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 224 (4th Cir. 2009) (brackets and internal quotation marks omitted); *see Wells Fargo Bank, N.A. v. Corneal*,

767 S.E.2d 374, 377 (N.C. Ct. App. 2014) ("A UDTPA action is distinct from a breach of contract action; a plaintiff must allege and prove egregious or aggravating circumstances to prevail on a UDTPA claim.").

We see no indication that North Carolina courts would hold that an insurer may consider its own interest in settling a claim under insurance law yet find such conduct to amount to a violation of the UDTPA. Further, the evidence does not show a genuine issue of material fact of any egregious or aggravating circumstances in this case. At bottom, Modern's case boils down to its mere dissatisfaction with its choice of a high-deductible insurance policy which, even considering the evidence in the light most favorable to Modern, does not defeat Eastern's motion for summary judgment.

IV.

Accordingly, we affirm the district court's order. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*